# McElwain v. Commonwealth.

March 23, 1943.

'G. S. Milam for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellant and Jesse Carneal, Hutch Carneal, Robert Carneal, and Jack Dalton were jointly indicted by the grand jury of Logan county, Kentucky, for the crime of assault with intent to rob. It is charged in the indictment that they assaulted Charley Epley and Mary

Epley with the intent and purpose to rob them of money and property of value. The crime was committed on January 5, 1942, and about one week thereafter warrants were issued for appellant and the other four named in the indictment charging them with the offense, and a deputy sheriff went to Ann Arbor, Michigan, and arrested appellant and the three Carneals and brought them to Logan county and lodged them in jail. Dalton was not apprehended at that time. The indictment was returned on February 3, 1942, and on the next day the case was set for trial on February 16. On February 10 the appellant, by his attorney, the Honorable G. Sam Milam, who had been employed by the family of appellant to represent him, entered motion for a continuance of the case to the May term of the court and in support of the motion Mr. Milam filed his affidavit and the affidavit of appellant. When the case was called for trial on February 16 the motion for a continuance was renewed and the case was passed and set for trial on February 27, and when it was called for trial on that day the same motion was renewed which the court overruled. Appellant was tried and convicted and sentenced to the penitentiary for a term of 21 years. He appeals.

A number of grounds are urged for reversal, among which is that the court committed error in overruling appellant's motion for a continuance of the case. Mr. Milam stated in his affidavit that on January 31, 1942, he was employed by the family of appellant to represent him and that he was the only attorney in the case, and that it would be impossible for him to prepare the defense for his client and present same on the day the case was set for trial, and that according to information given him by McElwain (appellant) the said McElwain resided at the Raneay Hotel in Ann Arbor, Michigan, where he was employed, and was in Ann Arbor on the date the alleged crime was committed, which fact he would be able to show in the trial of the case if given sufficient time to prepare the defense, and would be able to prove said fact by witnesses who resided there; that it would be necessary for the affiant, Mr. Milam, or someone acting on behalf of McElwain, to make an investigation in the city of Ann Arbor in order to establish the fact that appellant was in said city at the time the crime was committed; that McElwain was then and had been since his return from Michigan confined in the

Logan county jail and had been unable to do anything in his own behalf in securing necessary testimony to sustain his defense and would not be able to do so before February 16, 1942. Mr. Milam further stated that he was a member of the Kentucky Legislature and that the General Assembly of Kentucky convened on the first Tuesday in January and would be in session until about the middle of March, 1942, and it had been necessary for the affiant to attend the session of Legislature in Frankfort, and that his presence was required there until the termination of the session, and that it had been impossible for him to make the required investigation in Ann Arbor to enable him to present the necessary witnesses to establish the defense relied upon by McElwain but if granted a continuance such investigation would be made and the testimony presented on behalf of appellant at the May term of the Logan Circuit Court. Appellant filed his affidavit setting out substantially the same facts stated by Mr. Milam in his affidavit, and further stated that he was not guilty of the offense charged and had no connection therewith, and that he was in Ann Arbor, Michigan, on the night of the commission of the offense.

At the time Mr. Milam was employed to represent appellant he and no doubt appellant himself and the members of his family who employed Mr. Milam knew that Mr. Milam was a member of the Legislature, but appellant and the members of his family were willing to and did employ Mr. Milam with knowledge of all the facts set out and relied on with respect to Mr. Milam being a member of the Legislature. It is shown by a counter-affidavit of the Commonwealth's attorney that between the time of February 10 and February 16 Mr. Milam had been in Russellville and perhaps other cities and places and was not at Frankfort all the time during that interval. Mr. Milam was employed to represent appellant on January 31, 1942, which was approximately a month before February 27 and more than two weeks after the motion for a continuance was made on February 10, and it is not shown that during that time any effort was made by the family and friends of appellant or by Mr. Milam to make the investigation in Ann Arbor referred to in the affidavits. No reasons are shown why such investigation was not made, or attempted to be made by appellant's family or by Mr. Milam, except that Mr. Milam was a member of the Legislature. Further-

more, the affidavits did not set out the names of any witnesses by whom appellant could have proved the alleged facts set out in the affidavit, but merely speculated or assumed that he might or could find someone who would testify that he was in Ann Arbor on the date of the commission of the crime. The granting or refusing of a continuance is largely within a sound discretion of the trial court, and this court will not reverse the trial court for refusing a continuance unless it appears that the trial court exercised an abuse of a sound discretion. In the circumstances we are not prepared to say that the trial court exercised an abuse of a sound discretion in overruling the motion for a continuance. See Carter v. Commonwealth, 258 Ky. 807, 81 S. W. (2d) 883.

It is next insisted that the verdict is not sustained by the evidence. The three Carneals, indicted jointly with appellant, testified for the Commonwealth against the appellant, tending to connect him with the commission of the offense. Jesse Carneal admitted that he participated in the crime and was sentenced to eight years in the penitentiary. The indictment was dismissed as against Robert and Hutch Carneal for the want of sufficient evidence. It is insisted that there was no evidence tending to corroborate the evidence of the accomplice, or accomplices. It is shown by the uncontradicted evidence that when appellant was arrested in Ann Arbor the officers found the sum of $1,560 hidden behind a cushion in the rear seat of appellant's automobile, which appellant does not account for or explain except that he assumes that the Carneals or Dalton had placed the money in his automobile for the purpose of connecting him with the commission of the crime. If the Carneals or Dalton had been so motivated it is hardly reasonable to believe that they would have taken the risk of placing such a large sum of money in appellant's car, since a much smaller sum or some other trick or device might have served the same purpose. It is the rule that possession of stolen property is prima facie evidence of guilt and the burden then shifts to the accused to make a satisfactory explanation. In the circumstances the jury had the right to reject the unreasonable explanation offered by appellant. Mr. Epley, one of the prosecuting witnesses, definitely identified a number of the bills found in appellant's car as being a part of the same money of which he was robbed. Furthermore, ap-

pellant admitted that he gave the other participants in
the robbery information that the Epleys, who were rob-
bed, had a large sum of money in their home, possibly
$5,000 or $6,000, and they agreed to pay him the sum
of $200 for furnishing this information, but denied that
he was present or participated in the robbery or had
anything to do with it other than to give the informa-
tion. Mrs. Epley was asked if she could identify appel-
lant as one of the participants in the robbery and at
first she said she was not positive and rather indicated
that she could not so identify appellant, but finally said
that he was one of the participants. But her evidence
on this point is not very convincing, since in a previous
part of her testimony she was rather doubtful about be-
ing able to identify appellant. We think that in view of
all the admitted and proven facts the evidence of the ac-
complice or accomplices was sufficiently corroborated.

The next complaint is that the court failed to prop-
erly instruct the jury in relation to the evidence of an
accomplice or accomplices. The court gave an accom-
plice instruction in the usual form, telling the jury that
they could not convict appellant upon the evidence of an
accomplice unless corroborated by other evidence, etc.
The alleged vice urged to the instruction is that the
word "accomplice" was used in the singlar, not being
followed by the words "or accomplices," in the plural
and since there were more than one accomplice who
testified against appellant the instruction was prejudi-
cially erroneous. To support this contention appellant
cites and relies upon the case of Powers v. Common-
wealth, 110 Ky. 386, 61 S. W. 735, 53 L. R. A. 245, where
a similar question was involved. It was held in that
case that the court should have told the jury that they
could not convict the defendant upon the testimony of
an accomplice *or accomplices,* etc. It is not made clear
in that opinion whether the case was reversed because
of the court's failure to include in the instructions the
words "or accomplices," or whether it was reversed
upon other grounds, but it is said in that opinion that
the failure of the court to use the words "or accom-
plices" in the instructions was prejudicial. It may be
conceded that if that opinion be followed as authority,
appellant's position might be well taken. We find, how-
ever, more recent opinions which hold to the contrary.
The same question was involved in the case of Daniels

v. Commonwealth, 181 Ky. 392, 205 S. W. 402, 404, wherein this court said:

> "* * * This criticism is based upon the defendant's theory that one of the commonwealth's chief witnesses, Cline, was an accomplice of appellant, as well as G. C. Daniels, and that the instruction referred only to one accomplice rather than two.

> "This criticism, if not too trivial in fact to deserve serious consideration, is wholly without merit, because the instruction is equally applicable to the testimony of any accomplice whether one or more than one."

See, to the same effect, Schleeter v. Commonwealth, 218 Ky. 72, 290 S. W. 1075. Since a jury must be credited with having some common sense and intelligence it would be unreasonable to believe that the jury might have taken the view that although they could not convict upon the uncorroborated evidence of one accomplice but could convict upon the uncorroborated evidence of more than one. Furthermore, in the case of Oder v. Commonwealth, 195 Ky. 651, 243 S. W. 877, it was held that although one may be jointly indicted with the defendant he is not an accomplice unless the evidence proves him to be such. In the present case the indictment was dismissed as against Robert and Hutch Carneal for want of sufficient evidence, and hence they were not proven to be accomplices. Jesse Carneal, who admitted participation in the crime and was sentenced to eight years in the penitentiary, is the only one of those indicted jointly with appellant who was really an accomplice. Under authority of this case it would appear that there was only one accomplice who testified against appellant, and taking that view of the case, the instruction could not have been erroneous because of the absence of the words "or accomplices." Counsel for appellant insists, however, that the evidence did tend to implicate Hutch and Robert Carneal with the crime and hence they should be treated as accomplices. Conceding, arguendo, that to be true, still we think the Daniels and Schleeter cases, supra, are controlling and conclusive of this question.

It is next contended that the court erred by failing to admonish the jury that the admission of guilt of the accomplice, Jesse Carneal, should not be considered as

admission of guilt by the appellant. We do not think such admonition was necessary since appellant entered a plea of not guilty and testified before the jury that he was not guilty and had nothing to do with the actual commission of the robbery, or otherwise connected therewith except to give the other participants the information referred to above. In the circumstances it would be most unreasonable to believe that the jury might have convicted appellant upon the theory that the admission of guilt by Jesse Carneal was likewise admission of guilt by appellant. We find no merit in this contention.

Lastly, it is insisted that the court erred in permitting the introduction of incompetent evidence in the way of exhibits. At the trial of the case the clothing, bed clothing, broken door locks, and perhaps other items of wearing apparel were exhibited to the jury. It is insisted for appellant that the exhibition of such exhibits was erroneous and prejudicial since it was not proven that they had been preserved or maintained in the same condition they were in immediately following the assault and robbery. Mrs. Epley was asked and answered this question: "Have these (meaning the exhibits above referred to) been kept at the request of officers just like they were? A. Yes sir, in the box." It may be noted that the question embraced two points; i. e., whether the articles had been kept at the request of the officers, and just like they were, but the answer was in response to both points or the entire question. We think this was sufficient to prove the proper preservation of the exhibits.

Finding no error prejudicial to appellant's substanial rights, the judgment is affirmed.